# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:18-cv-294-FDW

| | |
|---|---|
| JOHN ANTHONY HILL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| DERRICK PALMER, et al., ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** is before the Court on initial review of *pro se* Plaintiff's Complaint, (Doc. No. 1). Plaintiff is proceeding *in forma pauperis*. (Doc. No. 8). Also pending are two Letters, (Doc. Nos. 1-16, 3), filed by Plaintiff that are construed as Motions for the Appointment of Counsel and a third Letter, (Doc. No. 9), that is construed as a Motion for Default Judgment.

**I. BACKGROUND**

*Pro se* Plaintiff, who is a pretrial detainee, filed a civil rights suit pursuant to 42 U.S.C. § 1983, addressing incidents that allegedly occurred at the Cherokee County Detention Center ("CCDC"). He names as Defendants: Cherokee County Sheriff Derrick Palmer; CCDC Captain Mark Patterson; CCDC Lieutenant Jeremy Bresch; and Cherokee County Manager Randy Wiggins.

Construing the Complaint liberally and accepting it as true, Plaintiff alleges that Palmer is legally responsible for the overall operation of the sheriff's department and CCDC. Patterson is legally responsible for CCDC and the welfare of all inmates at the facility. Bresch is legally responsible for the inmates at CCDC. Wiggins is legally responsible for managing County departments and was aware of Plaintiff's confinement at CCDC as well as Macon County

1

Detention Center ("MCDC") and had a duty to take action in response to Plaintiff's complaints.

Plaintiff has been a pretrial detainee awaiting trial since June 29, 2014. In March 2016, the CCDC Defendants began keeping Plaintiff's mail. Plaintiff started writing grievances and Defendants retaliated by keeping Plaintiff from going to church and punished him by placing him in max segregation where inmates are not allowed to attend church.

Plaintiff was tased and beaten on one occasion by Defendant Bresch who then let Plaintiff return to general population.

On July 24, 2017, Bresch renewed Plaintiff's magazines and newspapers out of Plaintiff's inmate account then refused to give them to Plaintiff and also refused to give Plaintiff a Discipleship Course that Plaintiff is taking by mail. Bresch knows that Plaintiff is Catholic and made a comment that "it's a wonder you're not a cho-mo (child molester)." (Doc. No. 1 at 15).

Plaintiff started writing grievances about not receiving his mail but none were returned so he could appeal. He started writing Defendant Patterson grievances and received no reply. After ten months of no mail and attempting to use the grievance procedure, Plaintiff wrote Defendant Palmer again, this time through Plaintiff's attorney, which Palmer received. Defendant Patterson was very angry that Defendant Palmer had received the letter and punished Plaintiff by transferring him to MCDC and placing him in max segregation without due process in retaliation for writing grievances and threatening to sue. Plaintiff tried to file an order to show cause for preliminary injunction in the Asheville Clerk's Office on March 25 and 28, 2018, and contacted Defendant Wiggins, Defendant Palmer, the County Attorney, the Human Rights Defense Center, SBI, ACLU, U.S. Department of Justice, State Auditor, County Auditor, County Finance Director Candy Anderson, Congressman Mark Meadows, Governor Roy Cooper, the Better Business Bureau, the Cherokee Scout, Andrews Journal, North Carolina Department of Public Safety Division of

Prisons, North Carolina Attorney General Josh Stein, and the U.S. District Court in Charlotte. Plaintiff has been assaulted, tased, placed in administrative segregation, denied proper food and hygiene, and transferred to max segregation in another jail two counties away which is creating a hardship for him and his family. Medical has been told to deny him pain medication for a staph/MRSA infection "per Captain and Lieutenant." (Doc. No. 1 at 17). He has been denied church and Rock of Ages Discipleship Courses for over three years and now all his mail has been stopped/censored.

Plaintiff believes that his outgoing mail was being censored at CCDC. At MCDC, Plaintiff's mail was going out so he was able to write Defendants Wiggins and Palmer to let them know what was happening. County Attorney Darryl Brown sent Plaintiff a letter instructing Defendants Palmer, Patterson, and Bresch, to give him his mail which they said was "boxed up." Plaintiff was sent 31 magazines, some of which were not his, out of at least 124 that were missing. "Defendants claim mail policy banned them. It didn't." (Doc. No. 1 at 15). Other inmates get magazines and Plaintiff is still being punished.

While Plaintiff was at MCDC, Defendant Palmer sent Chief Detective Joe Wood to see what Plaintiff wanted because Defendant Wiggins, Brown, and Anderson were "getting involved with the SBI." (Doc. No. 1 at 19). Plaintiff told Wood that he wanted to speak to Defendant Palmer about his rights being violated. Wood said he was opening an internal investigation and "SBI was already there." (Doc. No. 1 at 19). Defendant Palmer came to visit Plaintiff a week later in August 2018. Plaintiff told him "all that was being done" to him by Defendants Patterson and Bresch with regards to past and pending lawsuits, that CCDC would not give him his magazines and religious material. (Doc. No. 1 at 20). Plaintiff was brought back to MCDC on September 4, 2018 due to overcrowding. Plaintiff still cannot get his mail log.

On September 26, 2018, Plaintiff mailed more letters through his attorney in an attempt to get help. He has written several letters to the Cherokee Scout paper but on October 3, 2018, he called Editor Mathew Osborne who said he had not received them and wanted to know the status of the lawsuits pending against CCDC. Plaintiff is still on lockdown for no given reason.

Plaintiff claims that he has no plain, adequate, or complete remedy at law and that he will continue to be irreparably injured unless the Court grants declaratory and injunctive relief. He seeks declaratory judgment, a preliminary and permanent injunction ordering Defendants to follow the due process of the grievance system, stop censoring his mail and religious material and stop cruel and unusual punishment, transfers and segregation, compensatory damages, punitive damages, a jury trial, costs, and any additional relief the Court deems just, proper and equitable.

## II.  STANDARD OF REVIEW

Because Plaintiff is a prisoner proceeding *in forma pauperis*, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).  In its frivolity review, a court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989).  A complaint should not be dismissed for failure to state a claim "unless 'after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999)).

A *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Smith v. Smith, 589 F.3d 736, 738 (4th Cir. 2009) ("Liberal construction of the pleadings is particularly appropriate where … there is a pro se complaint raising civil rights issues."). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990). A *pro se* complaint must still contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007); see Ashcroft v. Iqbal, 556 U.S. 662 (2009) (the Twombly plausibility standard applies to all federal civil complaints including those filed under § 1983). This "plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted). He must articulate facts that, when accepted as true, demonstrate he has stated a claim entitling him to relief. Id.

### III. DISCUSSION

#### (1) Individuals and Entities Not Named as Defendants

The Federal Rules of Civil Procedure provide that, "[i]n the complaint the title of the action shall include the names of all the parties." Fed. R. Civ. P. 10(a); see Myles v. United States, 416 F.3d 551 (7th Cir. 2005) ("to make someone a party the plaintiff must specify him in the caption and arrange for service of process."). Although *pro se* litigants are entitled to have their pleadings liberally construed, Haines, 404 U.S. at 520, "[d]istrict judges have no obligation to act as counsel or paralegal to *pro se* litigants," Pliler v. Ford, 542 U.S. 225 (2004).

The body of the Amended Complaint contains allegations against individuals who are not

named as defendants in the caption as required by Rule 10(a). This failure renders Plaintiff's allegations against them nullities. See, e.g., Londeree v. Crutchfield Corp., 68 F.Supp.2d 718 (W.D. Va. Sept. 29, 1999) (granting motion to dismiss for individuals who were not named as defendants in the compliant but who were served). The allegations directed at individuals and entities not named as Defendants are therefore dismissed without prejudice.

**(B)** **Defendant Wiggins**

A state official can be in a § 1983 suit in three ways: in his personal capacity, his official capacity, or in a more limited way, his supervisory capacity. King v. Rubenstein, 825 F.3d 206, 223–24 (4th Cir. 2016). For personal liability, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." Kentucky v. Graham, 473 U.S. 159, 166 (1985). In an official-capacity suit, however, "[m]ore is required:" the suit is "treated as a suit against the entity," which must then be a "'moving force' behind the deprivation," id. (quoting Polk County v. Dodson, 454 U.S. 312, 326 (1981)); thus, the entity's "'policy or custom' must have played a part in the violation of federal law," id. (quoting Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978)). Meanwhile, a supervisor can be liable where (1) he knew that his subordinate "was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury;" (2) his response showed "deliberate indifference to or tacit authorization of the alleged offensive practices;" and (3) that there was an "affirmative causal link" between his inaction and the constitutional injury." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted).

Plaintiff does not appear to allege that Defendant Wiggins was personally involved in any of the actions that allegedly deprived him of his constitutional rights. Nor does Plaintiff allege that any constitutional deprivations occurred as a result of a policy or custom. Plaintiff's vague and

conclusory allegations are insufficient to state a claim for supervisory liability. The claims against Defendant Wiggins will therefore be dismissed for failure to state a claim.

**(2)    Due Process**

The Supreme Court has observed that "[d]ue process requires that a pretrial detainee not be punished" whereas a sentenced inmate may be punished, although that punishment may not be "'cruel and unusual' under the Eighth Amendment." Bell v. Wolfish, 441 U.S. 520, 535 n, 16 (1979). The due process rights of a pretrial detainee are therefore "at least as great as the eighth amendment protections available to the convicted prisoner…..'" Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988).

**(A)    Excessive Force**

The Due Process Clause of the Fourteenth Amendment "protects a pretrial detainee from the use of excessive force that amounts to punishment," Graham v. Connor, 490 U.S. 386, 395 n.10 (1989), and is not "an incident of some other legitimate governmental purpose," Bell, 441 U.S. at 538. An objective reasonableness test applies in pretrial detainee excessive force cases: (1) was the act purposeful (not negligent or accidental), and (2) was the force objectively unreasonable. See Kingsley v. Hendrickson, 135 S.Ct. 2466, 2473 (2015). Subjective questions like ill will and malice are not appropriate. Id.; see Duff v. Potter, 665 Fed. Appx. 242 (4th Cir. 2016). In determining whether the force was objectively unreasonable, a court considers the evidence from the perspective of a reasonable officer on the scene without the benefit of 20/20 hindsight. Kingsley, 135 S.Ct. at 2473. Considerations that bear on the reasonableness or unreasonableness of the force include: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or limit the amount of force; the severity of the security problem at issue; the threat

7

reasonably perceived by the officer; and whether the plaintiff was actively resisting. Id. A "bystander officer" could be liable for his or her failure to intervene if he or she: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." Randall v. Prince George's Cnty., 302 F.3d 188, 204 (4th Cir. 2002).

Plaintiff alleges that he has been assaulted and was tased and beaten on one occasion by Defendant Bresch. This claim is conclusory and lacking factual support. See generally Fed. R. Civ. P. 8. It is also duplicative of Plaintiff's claim that Defendant Bresch used excessive force against him in case number 1:18-cv-293 which has passed initial review. This claim will therefore be dismissed without prejudice.

**(B)** **Conditions of Confinement**

A typical substantive due process claim by a pretrial detainee challenges the general conditions of confinement or the treatment of all detainees in a specific facility. Williamson v. Stirling, 912 F.3d 154, 174 (4th Cir. 2018). To prevail on such a claim, a pretrial detainee must show that a particular restriction was either: "(1) imposed with an expressed intent to punish or (2) not reasonably related to a legitimate nonpunitive governmental objective." Slade v. Hampton Road Reg'l Jail, 407 F.3d 243, 251 (4th Cir. 2005).

A pretrial detainee challenging individually-imposed restrictions – as opposed to shared conditions of confinement – is entitled to pursue a procedural due process claim. Williamson, 912 F.3d at 174. Disciplinary and security restrictions must be rationally related to a legitimate governmental purpose, and pretrial detainees must be afforded at least the procedural protections that are afforded prisoners. If the treatment of a pretrial detainee is so disproportionate, gratuitous, or arbitrary that it becomes a categorically prohibited punishment, it will sustain a substantive due

process claim. Id. at 175. Further, pretrial detainees have at least the rights of convicted prisoners so jail officials must provide the detainee with at least the procedural protections afforded prisoners. Id. at 176; see Bell, 441 U.S. at 545.

Plaintiff alleges that he has been denied proper food and hygiene. This claim is too conclusory and lacking factual support to proceed. See generally Fed. R. Civ. P. 8. Plaintiff also alleges that he was placed in max segregation as punishment without due process. This claim is duplicative of Plaintiff's allegations in case number 1:18-cv-293 which has passed initial review. This claim will therefore be dismissed without prejudice.

**(C)     Grievances**

"[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). A prisoner's "access to and participation in the prison's grievance process are not constitutionally protected…." Taylor v. Lang, 483 Fed. Appx. 855, 857 (4th Cir. 2012).

Plaintiff alleges that his grievances were not answered and that he did not receive any relief or the opportunity to appeal. These allegations fail to state a § 1983 claim and are duplicative of Plaintiff's allegations in case number 1:18-cv-293. Therefore they will be dismissed.

**(D)     Deprivation of Property**

Where a state employee's random, unauthorized act deprives an individual of property, either negligently or intentionally, the individual is relegated to his state post-deprivation process, so long as the State provides an adequate post-deprivation remedy. Hudson v. Palmer, 468 U.S. 517 (1984); Parratt v. Taylor, 451 U.S. 527 (1981), *overruled on other grounds by* Daniels v. Williams, 474 U.S. 327 (1986)). However, post-deprivation remedies do not satisfy the due process requirement where the deprivation complained of is effected pursuant to an established

state procedure rather than a random, unauthorized action. Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982). Under North Carolina law, an action for conversion will lie against a public official who wrongfully deprives an owner of his property by an unauthorized act. Gallimore v. Sink, 27 N.C.App. 65, 67, 218 S.E.2d 181, 182 (1975). North Carolina's post-deprivation remedies are adequate. N.C. Gen. Stat. § 143-291; see Wilkins v. Whitaker, 714 F.2d 4, 6 (4th Cir. 1983) (due process satisfied where North Carolina tort law provides an adequate avenue for relief for state prisoner).

Plaintiff alleges that Defendant Bresch renewed Plaintiff's magazines and newspapers from his inmate account then withheld the materials from him. This claim is duplicative of Plaintiff's claim in case number 1:18-cv-293 which passed initial review and, therefore, will be dismissed.

**(3)** **Free Speech and Free Exercise**

The First Amendment states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech…." U.S. Const. Amend I. The First Amendment applies to the states through the Fourteenth Amendment. See Everson v. Bd. of Educ., 330 U.S. 1, 15 (1947). A prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. Pell v. Procunier, 417 U.S. 817, 822 (1974); Pittman v. Hutto, 594 F.2d 407, 410 (4th Cir. 1979). When a prison restriction infringes upon an inmate's First Amendment rights, the alleged infringement "must be evaluated in the light of the central objective of prison administration, safeguarding institutional security." Bell, 441 U.S. at 547 (citing Jones v. N.C. Prisoners' Labor Union, 433 U.S. 119, 129 (1977)).

**(A)** **Mail**

As a general rule, prisoners have the right to both send and receive mail. See <u>Thornburgh v. Abbott</u>, 490 U.S. 401, 408 (1989); <u>Pell</u>, 417 U.S. at 817. Restrictions on this right are valid if they are reasonably related to legitimate penological interests. <u>Turner v Safley</u>, 482 U.S. 78, 89 (1987). For instance, a prisoner's First Amendment interest in corresponding does not preclude prison officials from examining mail to ensure that it does not contain contraband. <u>Wolff v. McDonnell</u>, 418 U.S. 539, 576 (1974).

Plaintiff alleges that Defendant Bresch refused to give Plaintiff his magazines and newspapers as well as materials for a Discipleship Course that Plaintiff is taking by mail and that all mail has been stopped/censored for three years at CCDC. When the County Attorney ordered Defendants Palmer, Patterson, and Bresch to give Plaintiff his boxed up mail, they returned some magazines but a large number remained missing and their claims that mail policy banned the magazines is untrue. DDCD is also refusing to give Plaintiff his religious mail and he cannot get his mail log.

Plaintiff's claim that Defendants Palmer, Patterson, and Bresch denied or delayed Plaintiff's mail then returned only a portion of the withheld materials is duplicative of his allegations in case number 1:18-cv-293 that passed initial review. Insofar as Plaintiff claims that he has not been provided a copy of his mail log, he fails to allege that any of the named Defendants were involved in the denial of his mail log. This claim will therefore be dismissed.

**(B)** <u>**Religion**</u>

For government conduct to survive scrutiny under the Establishment Clause, "(1) it must have a secular purpose; (2) its principal or primary effect must neither advance nor inhibit religion; and (3) it must not foster an excessive government entanglement with religion." <u>Buxton v. Kurtinitis</u>, 862 F.3d 423, 432 (4th Cir. 2017) (citing <u>Lemon v. Kurtzman</u>, 403 U.S. 602, 612–13

(1971)); see also Madison v. Riter, 355 F.3d 310, 316 (4th Cir. 2003). To state a free exercise claim under the First Amendment, a plaintiff must allege facts sufficient to show that he held a sincere religious belief, and that the official action or regulation substantially burdened his exercise of that belief. Hernandez v. C.I.R., 490 U.S. 680, 699 (1989). A prison policy that substantially burdens an inmate's ability to practice his religion withstands a First Amendment challenge when it is "reasonably related to legitimate penological interests." O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987) (quoting Turner, 482 U.S. at 89). In deciding whether a defendant's actions can be sustained as reasonably related to legitimate penological interests, the court must consider the following four factors: (1) whether there is a valid, rational connection between the regulation and the legitimate penological interest; (2) whether there are alternative means of exercising the right in question that remain open to prisoners; (3) the impact accommodation of the asserted constitutional right would have on guards and other inmates and on the allocation of prison resources; and (4) whether ready alternatives exist which accommodate the right and satisfy the penological interest. See Turner, 482 U.S. at 89-90.

Plaintiff alleges that Defendant Bresch knows that Plaintiff is Catholic and commented "it's a wonder you're not a [child molester]," and that CCDC withheld mail from him, including religious materials. (Doc. No. 1 at 15). These allegations are insufficient to proceed because Plaintiff they are insufficient to demonstrate that Defendants' actions substantially burdened his exercise of a sincerely held religious belief. These allegations are also largely duplicative of his claims in case number 1:18-cv-293. Therefore, Plaintiff's free exercise claims will be dismissed without prejudice.

**(C)** **Retaliation**

The First Amendment right to free speech "includes not only the affirmative right to speak,

but also the right to be free from retaliation by a public official for exercising that right." Suarez Corp. v. McGraw, 202 F.3d 676 (4th Cir. 2000); see Am. Civil Libs. Un. of Md., Inc. v. Wicomico Cnty., 999 F.2d 780, 785 (4th Cir. 1993) ("Retaliation, though it is not expressly referred to in the constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights."). Prison officials may not retaliate against an inmate for exercising a constitutional right. See Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir.1978). To succeed on such a claim, a plaintiff must establish: (1) his or her speech was protected; (2) the defendant's alleged retaliatory action adversely affected the plaintiff's constitutionally protected speech; and (3) a causal relationship exists between the speech and retaliatory action. Suarez, 202 F.3d at 686; see also Adams, 40 F.3d at 75; Wicomico Cnty., 999 F.2d at 785; Huang v. Bd. of Governors of Univ. of N.C., 902 F.2d 1134, 1140 (4th Cir. 1990). In the prison context, such claims are treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." Adams, 40 F.3d at 74.

Plaintiff alleges that Defendants retaliated against him for writing letters, writing grievances, and threatening to sue by transferring him to MCDC and placing him in max segregation which kept him from going to church. He also claims that "Captain and Lieutenant" told "medical" to deny him pain medication for a staph/MRSA infection. (Doc. No. 1 at 17). These claims are duplicative of the retaliation claims in case number 1:18-cv-293 that have passed initial review. Plaintiff does not allege facts sufficient to state a retaliation claim against Defendant Wiggins. This claim will therefore be dismissed without prejudice.

**(4) Preliminary Injunction**

"A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24 (2008) (citing Munaf v. Geren, 553 U.S. 674,

689-90 (2008)). A preliminary injunction is a remedy that is "granted only sparingly and in limited circumstances." MicroStrategy, Inc. v. Motorola, Inc., 245 F.3d 335, 339 (4th Cir. 2001) (quoting Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 816 (4th Cir. 1991)). To obtain a preliminary injunction, a movant must demonstrate: (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. DiBiase v. SPX Corp., 872 F.3d 224, 230 (4th Cir. 2017) (quoting Winter, 555 U.S. at 20).

The typical preliminary injunction is prohibitory and generally seeks only to maintain the status quo pending a trial on the merits. See Pashby v. Delia, 709 F.3d 307, 319 (4th Cir. 2013). By contrast, a mandatory injunction "goes well beyond simply maintaining the status quo *pendent lite*, is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party." Taylor v. Freeman, 34 F.3d 266, 270 n. 2 (4th Cir. 1994) (quoting Martinez v. Mathews, 544 F.2d 1233, 1243 (5th Cir. 1976)). A mandatory injunction is warranted in only the most extraordinary circumstances. Id. (citing Wetzel v. Edwards, 635 F.2d 283, 286 (4th Cir. 1980)). Further, it is well established that "absent the most extraordinary circumstances, federal courts are not to immerse themselves in the management of state prisons or substitute their judgment for that of the trained penological authorities charged with the administration of such facilities." Taylor, 34 F.3d at 268; see Rogers v. Scurr, 676 F.2d 1211, 1214 (8th Cir. 1982) ("judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration.").

Plaintiff appears to seek preliminary injunctive relief insofar as he argues that he will continue to be irreparably injured by Defendants' conduct unless the Court grants injunctive relief. Plaintiff has failed to demonstrate that he is likely to succeed on the merits. Therefore, his claim

for preliminary injunctive relief will be denied.

## IV. PENDING MOTIONS

**(1)** <u>**Counsel**</u>

There is no absolute right to the appointment of counsel in civil actions such as this one. Therefore, a plaintiff must present "exceptional circumstances" in order to require the Court to seek the assistance of a private attorney for a plaintiff who is unable to afford counsel. <u>Miller v. Simmons</u>, 814 F.2d 962, 966 (4th Cir. 1987).

In a Letter filed with the Complaint, (Doc. No. 1-16), Plaintiff states "Please appoint an attorney to help me in this matter," and in a second Letter dated October 11, 2018, he states "I do need an Attorney, please appoint me one." (Doc. No. 3 at 1).

The record reflects that Plaintiff has been able to adequately represent himself in these proceedings and he has failed to demonstrate the existence of exceptional circumstances that justify appointment of counsel. Therefore, Plaintiff's Letters will be construed as Motions seeking the appointment of counsel and will be denied.

**(2)** <u>**Default**</u>

Plaintiff has filed a Letter asking the Court to "file a motion directing defendants to reply [and for] default judgment." (Doc. No. 9 at 1).

Plaintiff's Letter fails to comply with Rule 55 of the Federal Rules of Civil Procedure and, as no Defendant has been served to date, they have had no obligation to file an Answer or otherwise respond to the Amended Complaint. Defendants are not in default and accordingly Plaintiff's Letter will be construed as a Motion for Default Judgment and will be denied.

## V. CONCLUSION

The Complaint is sufficient to pass initial review on claims that are duplicative of case

number 1:18-cv-293, and the remaining allegations fail to state a claim on which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and therefore the Complaint will be dismissed without prejudice. The Motion for Preliminary Injunction incorporated in the Complaint is denied. Plaintiff's Letters seeking the appointment of counsel and default judgment are construed as Motions and are denied.

**IT IS THEREFORE ORDERED** that:

1. The Complaint is **DISMISSED** without prejudice in part as duplicative of case number 1:18-cv-293, and in part for failure to state a claim on which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

2. The Motion for Preliminary Injunction incorporated in the Complaint is **DENIED**.

3. Plaintiff's Letters, (Doc. Nos. 1-16, 3), are construed as Motions for the Appointment of Counsel and are **DENIED**.

4. Plaintiff's Letter, (Doc. No. 9), is construed as a Motion for Default Judgment and is **DENIED**.

5. The Clerk of Court is instructed to close this case.

Signed: February 26, 2019

Frank D. Whitney
Chief United States District Judge